UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LILY ROBBE,<br><br>    Plaintiff,<br><br>    v.<br><br>WEBSTER UNIVERSITY,<br><br>    Defendant. | Case No.: TBD<br><br>*JURY TRIAL DEMANDED* |

## COMPLAINT

Plaintiff Lily Robbe, through counsel, for her Complaint against Defendant Webster University, alleges:

## INTRODUCTION

1. This action seeks relief pursuant to the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.025, along with common law claims for relief. Plaintiff alleges that Webster University used deceptive and unfair practices to deprive Plaintiff of benefits of her Master's Degree Program in the Department of International Relations at Webster University campus in Geneva, Switzerland with serious consequences. By the employment of a series of objectively demonstrable misrepresentations, Defendant's agents and representatives violated Plaintiff's rights by refusing to appear for Plaintiff's scheduled thesis defense, instead attempting to induce Plaintiff to purchase additional educational services.

## JURISDICTION, VENUE, AND PARTIES

2. Plaintiff Lily Robbe ("Robbe" or "Plaintiff") is a foreign citizen, residing in Geneva, Switzerland. Plaintiff paid Webster University to enroll in its Master's Degree Program in the Department of International Relations in Geneva, Switzerland, effective August 27, 2010.

1

3. Defendant Webster University ("Webster University" or "Defendant") is a Missouri non-profit corporation doing business in the Eastern District of Missouri. Webster University holds itself out as a "worldwide institution," with campuses in locations outside the United States, including, at all times relevant, Geneva, Switzerland. Webster University supervises and regulates its foreign campuses from its home campus in Webster Groves, Missouri.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

5. Venue is proper under 28 U.S.C. §§ 1391(b) and (c).

## FACTUAL ALLEGATIONS

6. As a 2010 graduate of Webster University with a Bachelor's degree in International Relations with departmental honors, Robbe enrolled in Webster University's Master's Degree Program in the Department of International Relations in Geneva in Fall 2010.

7. Prior to enrolling in her Master's Degree Program, Webster University agents and representatives, working in the course and scope of their employment or agency for Defendant, represented to Plaintiff that she could undertake to prepare, and if passable, defend, a Master's thesis as part of her coursework.

8. This representation was material to Plaintiff as her sole intention of obtaining a Master's Degree was to undertake further studies in a PhD program, with the aim to pursue a desired career.

9. At all times relevant, as a matter of historical and objective fact, the setting of a thesis defense meeting date is *only* established when a thesis committee consisting of two readers deems the thesis passable.

10. With a cumulative grade point of average of 4.0, Robbe successfully completed the required credit hours of course work for her degree program as of August 2011. In that context, Robbe enrolled in her final course, her 6 credit Master's Thesis course.

11. As a matter of historical and objective fact, Robbe was to prepare and defend a thesis, conducted by an appropriately constituted thesis defense committee that had determined that the thesis was ready to be defended.

12. Robbe's official MA thesis committee consisted of Dr. Michel Veuthey and Dr. Sabina Donati.

13. On April 23, 2012, and again on May 2 and on May 3, 2012, Robbe tendered her thesis to Dr. Veuthey.

14. On May 17, 2012, Robbe tendered her thesis to Dr. Donati.

15. By email of June 11, 2012, the head of the International Relations Department in Geneva, Dr. Alexandre Vautravers, officially confirmed the constitution and establishment of Robbe's thesis committee.

16. On June 14, 2012, Dr. Veuthey proposed defense dates, including July 10, 2012. Dr. Veuthey wrote by email: "Tuesday the 10th of July after 3 pm, Wed 11 after 3 pm, Thursday 12 after 3 pm or Friday 13 any time, Best Wishes."

17. On June 15, 2012, Dr. Donati confirmed the date of July 10, 2012 for the thesis defense meeting two times, stating "10th of July is perfect for me. Please go ahead. All best" and again: "That's perfect. 3:30 on July 10."

18. Strangely—despite the fact that, as of June 14, 2012, Robbe had an officially constituted thesis defense committee that had determined that the thesis was ready to be

3

defended—on June 19, 2012, Dr. Veuthey requested a first draft of the thesis *as though he had never seen any draft whatsoever*.

19. At the time of Dr. Veuthey's June 19, 2012 email, he had already provided two sets of comments on thesis drafts and proposed to hold the defense meeting promptly.

20. Having received this bizarre request, Robbe contacted the Academic Director, Ron Daniel who immediately investigated the matter, including proof from Robbe that she in fact had provided her thesis to Dr. Veuthey and Dr. Donati.

21. Mr. Daniel promised Robbe that he would sort the matter out and the thesis defense of July 10, 2012 would take place as established.

22. Robbe trusted that Mr. Daniel was handling the matter, and no Webster University personnel indicated that the scheduled thesis defense meeting would not go forward as promised.

23. On July 10, 2012 at 3:30 pm, Robbe appeared for the meeting at the scheduled time. At that time, the thesis committee failed and/or refused to appear for the meeting.

24. Robbe went to see Mr. Daniel immediately. Mr. Daniel expressed surprise that the thesis committee was not there, but added that in any event he would be leaving for his summer holidays on July 13, 2012.

25. Robbe then went to the General Director of Webster University Geneva, Dr. Robert Spencer, in the office next door, who took matters into his own hands. Dr. Spencer requested to see the evidence of the wrongs committed by Robbe's thesis committee. Upon reviewing the evidence, Dr. Spencer promised to resolve the matter asking Robbe not to pursue the matter further.

26.     Later that evening Robbe saw that, earlier at 3:27 pm (when Robbe was meeting with Dr. Spencer) that Mr. Daniel sent an email to Dr. Donati, to which Dr. Donati responded at 3:56 pm with a demonstrably false and outrageous misrepresentation that "This email is to confirm that I have not received any version from the student so far (July 10)." In reality, Dr. Donati received, as early as May 17, 2012, a copy of the thesis, and at no time prior to establishing the defense date, or before the date of defense, had Dr. Donati expressed *any* objection to the thesis; on the contrary Dr. Donati had said it was perfect for her, asking Robbe to go ahead.

27.     On July 12, 2012, Robbe met again with Dr. Spencer. At that time, Dr. Spencer acknowledged the thesis as officially submitted and ready for its defense. Dr. Spencer acknowledged that Robbe had an official, properly constituted thesis defense committee which had established a defense date. Dr. Spencer then corrected the wrongdoing of July 10, 2012, by reestablishing the defense date to take place mid-August 2012 (precise date to be established through holidays). At that time, Dr. Spencer requested that Robbe not take further action in regard to the sabotage of her previously established meeting.

28.     Notwithstanding his resolution of the matter, Dr. Spencer by email of July 18, 2012, made two demonstrably false allegations to annul his own resolution: namely, (1) that Robbe did not incorporate Dr. Veuthey's advice; and (2) that Robbe did not incorporate Dr. Donati's advice. Notably, it would not be possible for Robbe to incorporate *any* input if, as previously alleged, Dr. Donati had "not received any version from the student so far (July 10)."

29.     Dr. Spencer then used the above false allegations to annul his July resolution to reconvene the meeting. Dr. Spencer further used the above false representations to attempt to induce Robbe to take (and pay for) *additional* courses at Webster University.

5

30. Also on July 18, 2012, in response to Robbe's inquiry, Dr. Donati corrected Dr. Spencer's false statement, writing that she was "<u>astonished by the fact that Lily had not and did not want to incorporate Dr. Veuthey's comments</u>….So Dr. Spencer's email contains a sentence which is incorrect. –what is correct are the words underlined above. All best."

31. Dr. Donati thus made the false statement that Robbe failed to incorporate comments of Dr. Veuthey—comments which Veuthey could not have made given his statement that he *never saw* the thesis. The statements of both Dr. Donati and Dr. Veuthey are at once contradictory and false.

32. Thereafter, Dr. Spencer attempted to deter Robbe from pursuing her thesis defense, and instead pursue additional courses, thus collecting additional tuition money from Robbe.

33. Robbe properly appealed to the Dean's office of the St. Louis campus; however, the Dean's office simply attempted to cover up its agents' wrongdoings, and failed and/or refused to honor Robbe's demands.

34. As a direct and proximate result of Defendant's unlawful conduct, Robbe has sustained damages, including without limitation, lost tuition, attorneys' fees, damage to reputation, and incidental and consequential damages. Robbe's damages significantly exceed $75,000.

## COUNT I
**(Missouri Merchandising Practices Act)**

35. Plaintiff re-alleges and incorporates as if fully set forth herein Paragraphs 1 through 34 of this Complaint.

36. Section 407.020 of the Merchandising Practices Act provides in relevant part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the

concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

37. Pursuant to Section 407.025, "[a]ny person who purchases or leases merchandise primarily for personal, family, or household or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use employment by another person of a method, act or practice declared unlawful by section 407.020" may bring a civil action against the party that violated the Act.

38. Section 407.020.1 prohibits unlawful actions "whether committed before, during or after the sale…."

39. Section 407.010(4) defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services."

40. Plaintiff purchased merchandise (*i.e.,* educational services) from Webster for personal, family, and household purposes, and as a result of Defendant's unlawful practices, suffered an ascertainable loss of money.

41. Defendant used deception, fraud, false pretense, false promise, misrepresentation and/or unfair practice, and/or concealed, suppressed, or omitted a material fact in connection with its representations and practices, including without limitation:

7

(a) Making false statements, such as that Robbe never presented a thesis draft in advance of the meeting, to support the annulment of the meeting;

(b) Representing that as a part of her degree program, Robbe could participate in a thesis project; and

(c) Attempting to coerce Robbe into paying for additional educational services by reference to misrepresentations such as that Robbe never presented a thesis draft in advance of the meeting.

42. As a result of Defendant's use of fraud, false pretense, false promise, misrepresentation or unfair practice, and/or of the concealment, suppression, or omission of a material fact, Plaintiff suffered an ascertainable loss of money or property.

43. The conduct of Defendant was outrageous because of Defendant's evil motives, and/or made with reckless disregard for the rights of Robbe, entitling her to an award of punitive damages.

44. As a result of Defendant's actions, Plaintiff has sustained damages.

## COUNT II
### (Promissory Estoppel)

45. Plaintiff re-alleges and incorporates as if fully set forth herein Paragraphs 1 through 34 of this Complaint.

46. Webster University made specific promises to Plaintiff, to wit:

(a) That the July 10, 2012 meeting would go forward; and

(b) That an August 2012 meeting would go forward.

47. Robbe reasonably relied on Defendant's promises.

48. Defendant expected, or reasonably should have expected, Robbe's reliance.

49. An injustice has resulted as a result of the parties' actions.

8

## COUNT III
### (Breach of the Duty of Good Faith and Fair Dealing)

50. Plaintiff re-alleges and incorporates as if fully set forth herein Paragraphs 1 through 34 of this Complaint.

51. Missouri law implies a covenant of good faith and fair dealing in every contract, including Defendant's promise to provide educational services, and conduct the thesis meeting.

52. Defendant had a duty to exercise discretion in such a manner as to not evade the spirit of the transaction or so as to deny Robbe the expected benefit of the bargain.

53. Defendant breached the covenant of good faith and fair dealing in the following non-limiting respects: by using misrepresentations alleged above to annul the meeting of July 10, 2012, and the August 2012 meeting.

54. As a result of Defendant's breach of the covenant of good faith and fair dealing, Robbe has been damaged.

55. The conduct of Defendant was outrageous because of Defendant's evil motives, and/or made with reckless disregard for the rights of Robbe, entitling her to an award of punitive damages.

## COUNT IV
### (Request for Declaratory Judgment)

56. Plaintiff re-alleges and incorporates as if fully set forth herein Paragraphs 1 through 34 of this Complaint.

57. An actual and continuing controversy exists regarding Robbe's rights in connection with the July 10, 2012 meeting as described above.

58. A declaratory judgment is both necessary and appropriate to establish that Robbe was entitled to the defense meeting under the terms established among the parties.

9

## COUNT V
### (Breach of Contract)

59. Plaintiff re-alleges and incorporates as if fully set forth herein Paragraphs 1 through 34 of this Complaint.

60. Dr. Spencer specifically promised Robbe that he would reconvene the meeting for August 2012. In exchange, Dr. Spencer requested that Robbe not take the matter higher, or otherwise pursue the failure to conduct the July 10, 2012 meeting. Robbe agreed.

61. Mutual obligations arose pursuant to the agreement.

62. Before Webster University breached the above agreement, Robbe performed her obligations.

63. Webster University breached the agreement by refusing to reconvene the meeting.

64. As a direct and proximate result of Webster University's breaches of contract, Robbe has been damaged in an amount to be proven at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Robbe respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A. Award Robbe compensatory damages;

B. Award Robbe punitive damages;

C. Award Robbe attorneys' fees;

D. Award Robbe incidental and consequential damages;

E. Declare that Robbe was entitled to the meeting described herein;

F. Award Robbe costs, and pre and post judgment interest;

G. Grant Robbe such further relief as deemed appropriate.

>Respectfully submitted,
>
>**KUHLMANN LLC**
>
>/s/ *Andrew W. Kuhlmann*
>Andrew W. Kuhlmann #6294407IL
>75 W. Lockwood Ave., Suite 1
>Saint Louis, Missouri 63119
>Telephone: (314) 621-3267
>Facsimile: (314) 627-5970
>*andrew@kuhlmannfirm.com*