# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LILY ROBBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14CV1223 HEA |
| | ) |
| WEBSTER UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss. Plaintiff filed a Response in Opposition to the Motion. Defendant filed a Reply, to which Plaintiff filed a Sur-Reply. Suffice to say, the Motion has been more than fully briefed. For the reasons set forth below, the Motion to Dismiss will be denied.

### Facts and Background[1]

Plaintiff Lily Robbe ("Plaintiff") is a foreign citizen who resides in Geneva, Switzerland. Defendant Webster University ("Defendant") is a non-profit corporation based in Missouri which has academic campuses in Missouri and other locations, including Geneva. Plaintiff graduated from Defendant's campus in Geneva in 2010 with a Bachelor's degree in International Relations. Thereafter, she enrolled in Defendant's Master's Degree Program in the Department of International Relations in Geneva in Fall 2010.

Before Plaintiff enrolled in the Master's Program, Defendant's agents and representatives advised her that during the Program she would be able to prepare a Master's thesis as part of her course work and, if it was deemed passable, defend her thesis. the opportunity to prepare and

---

[1] The recitation of facts is taken from Plaintiff's Complaint and are taken as true for the purposes of this motion. Such recitation in no way relieves any party from the necessary proof thereof in later proceedings.

defend a thesis was important to Plaintiff because her sole motivation for obtaining a Master's Degree was to undertake further studies in a PhD program, with the aim to pursue a desired career.

After maintaining a cumulative grade point average of 4.0 throughout the required coursework for her degree program, Plaintiff enrolled in her final 6 credit Master's thesis course in August 2011. Plaintiff was to prepare a thesis and, when it was deemed passable by a thesis committee, defend the thesis before the committee. Plaintiff avers that a date for a defense meeting is only set when a thesis committee comprised of two readers deems the thesis passable.

Plaintiff's official thesis committee was comprised of Dr. Michael Veuthey and Dr. Sabina Donati. After Plaintiff submitted her thesis to Dr. Veuthey and Dr. Donati in April and May 2012, the head of the Geneva campus's International Relations Department, Dr. Alexandre Vautravers, officially confirmed the constitution and establishment of Plaintiff's thesis committee in an email sent on June 11, 2012. Through emails sent on June 14 and 15, 2012, Dr. Veuthey and Dr. Donati established July 10, 2012 at 3:30 p.m. as Plaintiff's defense date.

Thereafter, on June 19, 2012, Dr. Veuthey requested a first draft of Plaintiff's thesis, as though he had never seen a draft of it. However, by that date he had already provided two sets of comments on thesis drafts and had proposed to hold the defense meeting promptly. Plaintiff, confused by Dr. Veuthey's request, contacted Ron Daniel, the Academic Director, who immediately investigated the matter, including proof from Plaintiff that she had provided her thesis to Dr. Veuthey and Dr. Donati. Mr. Daniel promised Plaintiff that he would resolve the situation and that she could defend her thesis as planned on July 10, 2012.

Plaintiff appeared to defend her thesis, as planned, at 3:30 p.m. on July 10, 2012. However, the thesis committee failed and/or refused to appear at the meeting. Plaintiff immediately went to see Mr. Daniel, who expressed surprise that the thesis committee had failed

to appear. Thereafter, Dr. Spencer emailed Dr. Donati about the matter, who then falsely stated in her reply that she had never received any draft of Plaintiff's thesis.

Plaintiff next went to the office of the Geneva campus's General Director, Dr. Robert Spencer. After Plaintiff provided Dr. Spencer with the evidence of the wrongs committed by the thesis committee, Dr. Spencer promised to resolve the matter and asked Plaintiff not to take further action.

Plaintiff met again with Dr. Spencer two days later, on July 12, 2012. At the meeting, Dr. Spencer acknowledged that the thesis was officially submitted and ready for defense, and that Plaintiff had an official, properly constituted thesis defense committee which had established a defense date. Dr. Spencer promised Plaintiff that a new defense date would be set for mid-August 2012, and requested that Plaintiff take no further action, such as taking the matter higher or otherwise pursuing Dr. Veuthey and Dr. Donati's failure to co conduct the July 10, 2012 meeting. Plaintiff agreed.

On July 18, 2012, Dr. Spencer sent Plaintiff an email falsely stating that Plaintiff incorporated neither Dr. Veuthey nor Dr. Donati's advice into her thesis. Based on the strength of these false statements, Dr. Spencer annulled his July 12 promise to set a new defense date for mid-August. Dr. Spencer encouraged Plaintiff to take additional courses at Webster University in Geneva, at Plaintiff's expense.

Plaintiff appealed the matter to the Dean's office of the St. Louis, Missouri campus. However, the Dean's office attempted to cover the wrongs that occurred in Geneva, and did not honor Plaintiff's demands.

Plaintiff filed this action on July 8, 2014, alleging violations of the Missouri Merchandising Practices Act, breach of the duty of good faith and fair dealing, breach of

contract, and promissory estoppel. Plaintiff seeks damages, attorneys' fees, and a declaratory judgment that she was entitled to a defense meeting under the terms established by the parties.

**Standard**

A complaint must set out a "short and plain statement of [a plaintiff's] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To test the legal sufficiency of a complaint, a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead facts from which the court can draw a "reasonable inference" of liability. *Iqbal*, 556 U.S. at 678. The complaint need not contain "detailed factual allegations" but must contain more than mere "labels and conclusions, and a formulaic recitation of the elements" or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *id.* at 679, which "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

Under *Twombly* and *Iqbal*, "[a] plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). If the plaintiff "inform[s] the [defendant] of the factual basis for [her] complaint, [she] [is] required to do no more to stave off threshold dismissal for want of an adequate statement of [her] claim." *Id.*

In evaluating a motion to dismiss, the court can "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Turning to any "well-pleaded factual allegations," the court should

"assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The court may only consider the initial pleadings. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 799 (8th Cir. 2011).

## Discussion

Defendant argues that Plaintiff has failed to state a claim for violation of the Missouri Merchandising Practices Act ("MMPA"), breach of contract, breach of the duty of good faith and fair dealing, and promissory estoppel. Defendant further argues that Plaintiff's claims should be considered noncognizable educational malpractice claims. Because the Court rejects Defendant's arguments at the pleading stage, the Court will deny Defendant's Motion to Dismiss.

### A.     Missouri Merchandising Practices Act

Defendant contends that Plaintiff failed to state a claim under the MMPA because the alleged conduct took place in Switzerland; she failed to plead her claim with particularity required of fraud allegations; and that applying the MMPA to conduct in Switzerland would constitute a violation of the commerce clause.

The MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose . . . in or from the state of Missouri." R.S. Mo. § 407.020.1. The MMPA provides a private right of action for "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020." R.S. Mo. § 407.025.1. Thus, to prevail on her MMPA claim, Plaintiff must show that she: "(1) [purchas]ed merchandise from defendant; (2) for

personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by section 407.020." *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 198 (Mo. Ct. App. 2009).

The Court rejects Defendants arguments regarding the MMPA. The alleged conduct is clearly geographically encompassed by the MMPA as Plaintiff alleged that "Webster University supervises and regulates its foreign campuses from its home campus in Webster Groves, Missouri." [Doc. No. 1 at ¶ 3]. Plaintiff's complaint meets the heightened pleading standard required by Rule 9(b) of the Federal Rules of Civil Procedure in that she extensively detailed the factual events underpinning her claims—including the names of relevant individuals, as well as the dates times, and locations of key events. Finally, the case law Defendant cites for its commerce clause argument is wholly inapposite. Accordingly, the Court finds that Plaintiff has stated a claim for a violation of the MMPA.

**B.     Breach of Contract**

Plaintiff alleges that her July 12, 2012 meeting with Dr. Spencer produced a contract, through which he promised to set a new defense date in mid-August, and Plaintiff promised that she would not "take the matter higher, or otherwise pursue the failure to conduct the July 10, 2012 meeting." [Doc. No. 1 at ¶ 60]. Defendant contends that Plaintiff's allegations are too vague to properly aver a meeting of the minds between Dr. Spencer and Plaintiff; that any alleged agreement fails for want of a specific date for the August meeting; that Plaintiff's actions in refraining from further pursuing the matter did not constitute valuable consideration; and that the alleged oral contract is unenforceable under the statute of frauds.

"To make a submissible case for breach of contract claim, a plaintiff must allege and prove: (1) a mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5)

damages resulting from the breach of contract." *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs.*, 204 S.W.3d 183, 203 (Mo. Ct. App. 2006) (citing *Norber v. Marcotte*, 134 S.W.3d 651, 658 (Mo. Ct. App. 2004)).

The Court finds that Plaintiff's allegations are not too vague to allege a meeting of the minds between Dr. Spencer and Plaintiff. Defendant's arguments that Plaintiff failed to adequately allege any conditions precedent Plaintiff would need to take prior to the August meeting and what specific further action Plaintiff promised to refrain from taking are unavailing. Accepting Plaintiff's allegations as true—as the Court must, *Iqbal*, 556 U.S. at 679—the terms of the alleged contract were quite clear: Dr. Spencer promised to set a date in mid-August for Plaintiff's thesis defense, and Plaintiff promised not to pursue the matter further. Per the alleged agreement, Plaintiff did not need to meet any conditions precedent before the August meeting, and the actions she promised to refrain from taking involved bringing the matter to a level of authority higher than Dr. Spencer. Further, the fact that Plaintiff alleges only that she and Dr. Spencer agreed that Dr. Spencer would set a date in mid-August for her thesis defense, but did not agree to an exact date, is not enough to derail her claim at the pleadings stage. Plaintiff alleges that Dr. Spencer promised to set a date for the thesis defense. This allegation is sufficient to state a claim.

With regard to whether Plaintiff's actions in refraining from pursuing the matter further constitutes valuable consideration, the Court notes that "[c]onsideration for a simple contract may consist of a party refraining from doing anything he has a legal right to do." *State ex rel. Goldberg v. Barber & Sons Tobacco, Inc.*, 649 S.W.2d 859, 862 (Mo. 1983) (citing *Wells v. Hartford Acc. & Indem. Co.*, 459 S.W.2d 253, 260 (Mo. 1970)); *see also Duvall v. Duncan*, 341 Mo. 1129, 1136 (Mo. 1937) ("[A] waiver of any legal right, at the request of another party, or any benefit to the defendant, or detriment to the plaintiff, or any act done at the defendant's

request and for his convenience, or to the inconvenience of the plaintiff, would be sufficient to support a promise by the defendant.") (internal citation and quotation marks omitted). Plaintiff clearly had a legal right to pursue the cancellation of her scheduled July thesis defense with an authority higher than Dr. Spencer, but refrained from doing so. Thus, Plaintiff has pled that he gave valid consideration.

Finally, Defendant contends that, because the statute of limitations for contract claims in Missouri is five years, Plaintiff could not have fully performed her promise—refraining from pursuing the matter past Dr. Spencer—within one year and, therefore, it is an unenforceable oral contract under the statute of limitations. [Doc. No. 10 at 9] [citing R.S. Mo. §§ 432.010, 516.120]. However, as Plaintiff notes in her Response, "the agreement was that the meeting occur within one month (not one year)." [Doc. No. 13 at 10]. Thus, Plaintiff has alleged the existence of an oral contract that could be fully performed within a year and is therefore not rendered unenforceable by the statute of limitations.

**C.  Promissory Estoppel**

Defendant contends that Plaintiff failed to state a claim for promissory estoppel because she failed to allege detrimental reliance on a promise made by Defendant. Because the Court finds that Plaintiff has adequately alleged detrimental reliance, the Court will deny Defendant's Motion as to this claim.

"To state a claim of promissory estoppel, a plaintiff must allege a promise made by the defendant; foreseeable, detrimental reliance on the promise by the plaintiff; and that an injustice would occur unless the promise is enforced." *Jamison Elec., LLC v. Dave Orf, Inc.*, 404 S.W.3d 896, 898 (Mo. Ct. App. 2013) (citing *Clark v. Wash. Univ.*, 906 S.W.2d 789, 792 (Mo. Ct. App. 1995)).

Plaintiff asserts that she pled detrimental reliance in the form of: (1) paying tuition for her degree program to participate in the thesis opportunity which Defendant sabotaged through clearly false statements; (2) giving her time and effort and opportunity cost to produce her thesis, and dealing with bad faith misrepresentations via a St. Louis appeal process; (3) incurring incidental and consequential damages associated with her lengthy appeal and the filing of this lawsuit after the St. Louis campus further and covered up the clearly fantastical misstatements used to annul the meetings; and (4) being deprived of the alleged benefits of her degree program.

The Court finds that Plaintiff's allegations that she paid tuition for the opportunity to defend a thesis if it were deemed passable, coupled with her allegation that the setting of a thesis defense date by definition means that the thesis has been deemed passable, and her allegation that she was deprived of the opportunity to so defend her thesis after a defense date was set, are sufficient allegations of detrimental reliance. Accordingly, the Court finds that Plaintiff has stated a claim for promissory estoppel and therefore will deny Defendant's Motion as to this claim. *See Twombly*, 550 U.S. at 557 ("And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal citation and quotation marks omitted).

**D.     Good Faith Fair Dealing**

Defendant argues that the Court should dismiss Plaintiff's claim for breach of the duty of good faith and fair dealing because "no enforceable contracts exist between the parties." [Doc. No. 10 at 9]. Because the Court has found that Plaintiff sufficiently pled the existence of a contract created between herself and Dr. Spencer at the July 12, 2012 meeting—and because a contract between Plaintiff and Webster University in which tuition was exchanged for educational services clearly existed—the Court will deny Defendant's Motion to Dismiss as to this point.

### E. Educational Malpractice

Defendant argues that Plaintiff's claims amount to claims for educational malpractice, which are not recognized under Missouri law, because the courts "have refused to become the overseers of both the day-to-day operation of [the] educational process as well as the formulation of its governing policies." *See Dallas Airmotive, Inc. v. FlightSafety Int'l*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008) (alteration in original) (quoting *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 472 (Minn. Ct. App. 1999)). However, the Court agrees with Plaintiff's argument that her allegations—that the setting of a thesis defense date signifies a determination that the thesis has been deemed to be passable, and that Dr. Veuthey and Dr. Donati, after establishing a thesis defense date, failed to permit Plaintiff to defend her thesis—"challenge[] [Defendant's] failure to provide the promised service, not its quality." [Doc. No. 19 at 3].

Accordingly, the Court rejects Defendant's argument that plaintiff's claims should be dismissed as noncognizable educational malpractice claims.

### F. Declaratory Judgment

Defendant argues that once the claims discussed above are dismissed, Plaintiff will have alleged no legal rights in the Complaint from which the Court could issue a declaratory judgment. Because the Court will deny Defendant's Motion to Dismiss as to the other counts, Defendant's argument for dismissing Plaintiff's request for declaratory judgment fails.

### Conclusion

Based on the foregoing, Defendant's Motion to Dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 9] is **DENIED**.

Dated this 25th day of March, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE